# Doe, *ex dem.* Rowe *v.* Goetchius.

## *Ejectment.*

(Decided February 13, 1913. 61 South. 330.)

1. *Ejectment; Issue; Verdict.*—The complainant and facts examined and it is held that a verdict finding for defendant for the lands lying south of the fence row was not responsive to the issues and therefore erroneous.

2. *Same; Requisites.*—In ejectment a verdict for the plaintiff must describe the lands, but if for defendant it need not describe them, in either case, however, it must be responsive to the issues submitted to the jury.

3. *Trial; Verdict.*—In literature "verdict" is a true saying, but in law it is the answer of a jury concerning matters of fact submitted to them under the issues made by the pleading, as applied to the legal principles laid down by the court for their guidance.

Dowdell, C. J., and McClellan and Sayre, JJ., dissent.

APPEAL from Macon Circuit Court.

Heard before Hon. S. L. BREWER.

Ejectment by John Doe on the demise of Cordelia Rowe against Mary R. Goetchius. Judgment for defendant and plaintiff appeals. Reversed and remanded.

OSCAR S. LEWIS and A. A. EVANS, for appellant. No brief reached the Reporter.

MERRITT & RILEY, for appellee. No brief reached the Reporter.

MAYFIELD, J.—This action was common-law ejectment. The land sought to be recovered was a right-angled triangle out of the south half of the north half of section 28, township 16, range 25. The right angle was at the southeast corner of said subdivision. The original complaint claimed 80 acres described (in the figure) as the right-angled triangle A, B, C. The defendant disclaimed as to the triangle B, C, D, and pleaded "not guilty" as to the triangle A, B, D.

[Doe, ex dem. Rowe v. Goetchius.]

The plaintiff then amended his complaint so as to sue for only the triangle A, B, E, as to which the defendant pleaded "not guilty." So the only issue triable was as to the title, possession, etc., of this triangle A, B, E.

There are recitals in the record tending to show that the plea of disclaimer was refiled to the amended complaint; but there is no claim that any other plea of disclaimer was ever filed. The plea of disclaimer was of course not apt, and could not be availing as to the amended complaint because it related to and described no part of the lands sued for in the amended complaint, and as to which the trial was had. The land described in the plea of disclaimer did not even coincide with or relate to land adjacent to that sued for. There was a triangle between that and the land claimed in the amended complaint. Moreover, the judgment conclusively shows that issue wa joined alone on the plea of "not guilty." The verdict of the jury was: "We, the jury, find for the defendant for the land lying south of the fence row." The plaintiff objected to this verdict and moved the court to set it aside and grant a new trial upon the ground that it was vague, indefinite, and uncertain, and would not support a judgment. The court overruled the motion and entered upon the verdict a judgment for the defendant for the costs of the case. This was error. There was nothing in the pleadings to support such a verdict. There was not a word in the complaint, original or amended, as to a "fence row." It is true that the plea of disclaimer above referred to did describe the line B, C, as a fence row, and that there was some proof as to a fence row; but that fence row was not on the land sued for, and as to which the trial was had. It is likewise true that the land sued for was south of this fence row; but that fact no more

described the land sued for than it did any other land south of the fence row. In fact, the land immediately south of the fence row was not sued for. Suppose the judgment had been for the plaintiff instead of the defendant, could the plaintiff be put into possession of land not sued for? Certainly not. No more should this judgment have been entered for the defendant.

The trial court seems to have fallen into error in supposing that the land upon which this fence row was located, and that immediately north and south thereof, was in litigation, which, as we have shown, was not the fact. This might have been true if the trial had been had on the original complaint, and the plea of disclaimer properly filed thereto; but the complaint was amended by striking out all of the land north of the fence row, and a considerable triangle immediately south thereof. It follows that the verdict should have been arrested and a venire de novo awarded. If the original complaint and plea of disclaimer could be looked to, the verdict would still be insufficient, because it would then fail to find at all as to the lands north of the fence row. The law and the practice in such cases is well settled to the effect that this was reversible error.

A verdict in literature is a true saying. In law it is the answer of the jury, given to the court concerning the matters of fact submitted to them under the issues made by the pleadings, and as applied to the legal principles laid down by the court for their guidance.—*Davis v. Township of Delaware*, 41 N. J. Law, 55; *Bonham v. Bishop*, 23 S. C. 96.

Mr. Gould says: "Judgment is sometimes arrested, when the pleadings are good, for faults in the verdict. If the verdict vary substantially from the issue (as if, instead of finding the matter in issue either way,

[Doe, ex dem. Rowe v. Goetchius.]

the jury should find something foreign to it), judg-
ment must be arrested, because the finding does not
ascertain the matter of fact in issue, and cannot there-
fore show for which party judgment ought to be given.
The rule is the same when the verdict finds only a part
of the matter in issue, omitting to find, either way,
another material part. For it is the duty of the jury to
ascertain, and that of the court to give judgment upon,
all the material facts put in issue by the pleadings.
But a verdict finding the whole substance of the issue
is good, although it be silent as to what is immaterial,
since the latter cannot affect the merits of the con-
troversy."—Gould on Pleading, 521.

The Supreme Court of the United States has express-
ed the same rule as follows: "A verdict is bad if it
varies from the issue in a substantial matter, or if it
finds only a part of that which is in issue. The rea-
son of the rule is obvious. It results from the nature
and the end of the pleading. Whether the jury find a
general or a special verdict, it is their duty to decide
the very point in issue; and although the court in
which the cause is tried may give form to a general find-
ing, so as to make it harmonize with the issue, yet if it
appears to that court, or to the appellate court, that the
finding is different from the issue, or is confined to a
part only of the matter in issue, no judgment can be
rendered upon the verdict. It is true that if the jury
find the issue, and something more, the latter part of
the finding will be rejected as surplusage; but this rule
does not apply to a case where the facts found in the
verdict are substantially variant from those which are
in issue."—*Patterson v. United States,* 2 Wheat. 221,
4 L. Ed. 224.

It is said that, because the verdict is for the defend-
ant, it is sufficient. This is not true, for the reason

that it is no more responsive to the issue or question propounded to the jury than if it had been for the plaintiff. Whether or not it is responsive can in no wise or in any degree be made to depend upon the question for whom it is rendered. Whether an answer is responsive to the question propounded does not at all depend upon whether it be affirmative or negative, nor upon whom it is intended to benefit.

Suppose a witness be asked if the defendant entered upon and holds possession of lot A, and he answer as to lot B, the answer is not made responsive because he says the defendant did not enter upon or hold lot B. The answer is then just as much irresponsive as if he had said that the defendant did enter upon and hold lot B. It is very true that a verdict for the defendant need not be as certain as if it were for the plaintiff, because the judgment does not then have to be executd in the same manner as if for the plaintiff. In ejectment this is strictly true, because the statute requires that the verdict and judgment must describe the land. But it has been frequently held by this court that, if the verdict is both general and responsive, it is sufficiently certain and answers the requirement of the statute as to certainty of description, because it can then be referred to the pleadings and thereby made certain. But if it be not responsive to the issue made by the pleading, it, of course, cannot be made certain by such reference; that is, it is not and cannot be aided by the pleading.

If the verdict and judgment in this case should be affirmed, and the plaintiff should bring another action just like the first, with the same result, the defendant would thereby acquire title by virtue of two suits in ejectment as to land as to which there was never any litigation or controversy. Nor would there be any means of knowing how much land he had thus acquired.

To restate the proposition in the abstract: A verdict for plaintiff in ejectment must describe the lands. If for the defendant, it need not so describe same; but a verdict in any case, and no matter for which party, must be responsive to the issue propounded to the jury. For which party a verdict is rendered has nothing to do with determining whether or not it is responsive. A verdict not responsive is bad, whether it be for the plaintiff or for the defendant. If a verdict be general and responsive, it can be referred to the pleadings and made certain; if not responsive, it cannot be referred to the pleadings because it departs therefrom, and it cannot therefore be made certain by such reference.

Now as to the concrete case: It is perfectly evident from the record in the case on this appeal. and from that on the former, that the real dispute between the parties is the location of a boundary line. Why the parties have not had this line located and determined in this suit, as the statute now in terms authorizes, it is difficult to understand, unless it be due to the fact that the parties and the trial court have overlooked this provision of the statute as to ejectment suits. The statute (Code, § 3843), among other things, now provides: "The defendant in his disclaimer may suggest to the court that the suit arises over a disputed boundary line, and thereupon the court shall make up an issue and submit to the jury the question of the true location of the line, and shall render judgment accordingly and order the sheriff to establish and mark the true line, found by the jury, and in such case, apportion the costs justly and equitably."

While the record in this case shows intimations of an attempt to comply with this provision, it is rendered wholly abortive by subsequent amendments of the pleadings, and the judgment entry showing that the

case was tried on the general issue of not guilty, and not upon an issue made up by the court to determine the disputed boundary line.

It is true that prior to the Code of 1907 a disputed boundary line could not be determined in an action of ejectment or the statutory action in the nature thereof, if the plaintiff declined to take issue on the defendant's disclaimer. This defective and anomalous condition of the law was pointed out by Chief Justice Stone in the case of *McQueen v. Lampley,* 74 Ala. 408, and the statute was amended in accordance with the suggestions made in the opinion in that case. In that case the defendant attempted to do what the defendant has attempted to do in this case, which called forth the remarks of Judge Stone in that case. It is there said: "In the present suit, the only question in issue being that of title to the lands described in the complaint, the plea of not guilty puts the title, and only the title, in issue. Disclaimer or denial of possession would have put in issue the question, and only the question, of possession. The former is an admission of the defendants' possession, with denial of plaintiff's title; the latter, an admission of plaintiff's title, with denial of defendant's possession. They are incompatible defenses, and cannot be pleaded together.—*Bernstein·v. Humes,* 60 Ala. 582 [31 Am. Rep. 52]. Denial or disclaimer of possession of the lands sued for would have been a denial that the lands of which defendants had the possession were in section 22. If, on such disclaimer interposed, plaintiff had not controverted it by averring the defendants were in possession, then plaintiff could have taken judgment for want of plea, and would have recovered the lands described in his complaint, but without damages or costs. This would have given her a right to the lands, extending up to the northern

boundary of section 22, for the lands described in her complaint extended to that boundary. It would not and could not have determined where the true dividing line ran. That would not, in such supposed case, have been put in issue. As stated above, the duty of ascertaining where the true line was would have rested on the sheriff in executing the writ of possession. Such judgment could not have accomplished the purpose the parties had in view. In what is stated above, it is shown that in such a case as this, if the defendant disclaim possession, the plaintiff may take judgment, and thus prevent a judicial ascertainment of the disputed boundary, and leave it for determination by the sheriff. We submit if there should not be some change of the statute on this subject. Should not a defendant, in a case like the present, have equal right with the plaintiff, who brings him into court, to so plead as to put the question of boundary in issue, and have the jury pass upon it? The plaintiff, by controverting the disclaimer and averring the defendant was in possession when the suit was brought, may have a verdict and judgment on the question of boundary. He may, however, decline to do so, and thus leave the controversy in such form as to invite other suits."

Verdicts very similar to the one in question have been pronounced bad. In the case of *Lewis, et al. v. Childers, et al.,* 13 W. Va. 1, the verdict was as follows: "We, the jury, find for the defendants, and fix the line, as shown on the Sinnett may, from C to D." This verdict was held by the appellate court, under the circumstances and facts stated in its opinion, to be so irregular and vague as to matters in issue as that the same should be set aside and a new trial awarded. The court, speaking of the verdict, said: "Under the circumstances of the case, and from the language of the

jury employed in their verdict, I do not feel satisfied that the jury in fact found, or intended to find, a general verdict for the defendants in the case as against the plaintiffs. Upon the contrary thereof, prima facie it would seem, whatever may have been their true intention that the jury, instead of finding a general verdict for the defendants, meant to find a special verdict whereby they meant to decide that the plaintiffs had no right to the possession of the whole of said tract B, E, D, C, B, as laid down on said Sinnett map, but had a right to the possession of a part thereof, but as to which part the verdict is so vague and uncertain, that it cannot be determined with any reasonable certainty."—13 W. Va. at page 9.

In the case of *Smith v. Jenks, et al.,* 10 Serg. & R. (Pa.) 153, the headnote reads: "A verdict in ejectment 'that the defendant should have the third part of the 41 acres and 32 perches near, and, if any overplus, it goes to the plaintiff,' is too uncertain, and it cannot be cured by the court's appointing a surveyor to designate the rights of the parties and rendering judgment thereon." In this case the court said (10 Serg. & R. [Pa.] 154): "This verdict is too uncertain; a judgment cannot be entered on it. The ejectment is for 8 acres of land. The jury find that the defendant is entitled to one-third of the 41 acres and 32 perches, and, if any overplus, it goes to the plaintiff. What these 41 acres and 32 perches are, or where they lie, is unknown, or in what part of them the defendant is to have his one-third. Nor do the jury find whether there was any overplus, or whether anything was in possession of the defendant which belonged to the plaintiffs. The court cannot say, from this finding, whether the defendant was guilty of any trespass. If the verdict was uncertain in itself, the court could not mend it by sending

[Hale v. Chandler.]

out surveyors to carry into effect what they supposed
to be the intent of the jury. They could but guess at
their meaning. A verdict is not good unless it carries
certainty upon its face, or refers to things by which
it may be rendered certain."

Reversed and remanded.

ANDERSON, SOMERVILLE and DE GRAFFENRIED, JJ.,
concur. DOWDELL, C. J., and MCCLELLAN and SAYRE,
JJ., dissent.